Smith, C. J.
The indictment in this case charges the defendant Williamson with the crime of murder in the first degree, in the killing of William Hughes. At the trial the jury returned a verdict against him of manslaughter only, and recommended him to the mercy of the court. He was sentenced to imprisonment in the penitentiary for the period of ten years.
A motion for a new trial had been filed on the grounds that the verdict was against the weight of the evidence; that the court erred in admitting evidence against the objection of the defendant, and that the court erred, in refusing to give certain special charges requested to be given, and in the charge as actually given to the jury. This motion was overruled, and a bill of exceptions taken, containing all of the evidence offered, with the rulings of the court on the other questions.
■ The petition in error filed in this court assigns the same errors; but the counsel for Williamson now relies alone upon this, that the court erred in its charge to the jury as given, *293 and in refusing to give the special charges requested. We have therefore examined the testimony offered, only with the view of ascertaining whether the charges so requested were relevant to the case, and if correct in law, should have been given by the court to the jury.
The charges so asked aiid refused related to two subjects: first, the responsibility of the defendant, if it were shown by the evidence, that the death of Hughes was the result of a simple accident or misadventure on his (Williamson’s) part; and second, what offense was committed if the death of Hughes was caused by a shot from a pistol, intentionally pointed, or discharged at him, by the defendant, but without any malice on his part? Could he properly be convicted of manslaughter, or must he be found guilty (if at all) under the provisions of sec. 6822, Rev. Stats. ?
At the trial it was admitted by the defendant, that Hughes came to his death by a shot from a pistol then held in the hands of the former. The evidence on the part of the state tended strongly to show, not only that the pistol was intentionally pointed at the deceased by the defendant, but also that it was purposely discharged by Williamson with the intent to kill or injure him. But it is entirely clear, that the evidence on the part of the defendant tended to negative all of these facts, and to prove that Williamson did not either aim, point or discharge the pitol at Hughes intentionally; but that while holding it in his hands, he stooped to pick up his handkerchief, and while in the act of rising, the pistol which was in bad order, accidentally and without any fault on his part, went off and killed Hughes.
There can be no question, we think, but that the evidence in the case'was such, as to make it obligatory upon the court to give to the jury a special instruction if properly requested by the defendant so to do, containing an apt and correct statement of the law as to the responsibility of a person charged with homicide in causing the death of another by accident or misadventure. Or if he should refuse to give the charge as requested, that he should, in his own language, properly present the law on that point to the jury.
The charge asked by the counsel for the defendant was this : “‘If you find that the deceased, William Hughes, came *294 to his death at the hands of Winston Williamson, by the discharge-of a pistol, and that this was an accident, then you will acquit the defendant.”
As we understand it, it has always been the law (unless it has been changed by the terms of sec. 6822 before referred to), that when the death of one person resulted simply and purely from accident or misadventure, in the true meaning of these words, on the part of another, there was no criminal responsibility on the part of the slayer, but that it constituted what is known in the law as excusable homicide. He would be responsible certainly, if it were the result of gross carelessness or recklessness, or if at the time be was (to use the language of our old.statute of manslaughter) in the commission of any unlawful act — but in such cases, in contemplation of law, this would not be accident or misadventure. The definition of this word “ accident,” as given in Bouvier’s Law Dictionary, is this: “An event which under the circumstances- is unusual and unexpected by the person to whom it happens. The happening of an event without the concurrence of the will of the person by whose agency it is caused.” And the meaning of the word “ misadvénture” as given by the same authority is : “ An accident by which injury results to another. When applied to homicide, misadventure is the act of a man who in the performance of a lawful act, without any intention to do harm, and after using proper precaution to prevent danger, unfortunately kills another person. The act upon which' the death ensues must be neither malum in se, nor malum prohibitum.” And his definition of excusable homicide is, “that which takes place under such circumstances of accident or necessity that the party can not strictly be said to have committed the act willfully and intentionally, and whereby he is relieved from the penalty annexed to the commission of a felonious homicide. And see, 4 Blackst. Com., 188, and 1 East. P. C., 214.
Unquestionably, the purpose of the statute, sec. 6822, was, to make any intentional pointing or aiming of any fire-arm at another person, a criminal offense, even if there was ho malice in the act; unless when used in self-defense, in the discharge of official duty, or in case of justifiable homicide.’ *295 And in thus making it an illegal act, to provide a punishment for it, and to make a person guilty of such an act responsible for the consequences, the intention doubtless being to so legislate as to make it clear, that what before might have been claimed to be an accident or misadventure, when an injury was produced in this manner, should no longer be so considered — and to prevent if possible the foolish and reprehensible custom so common in our country, of pointing a fire-arm at another in jest, or under the belief that it was not loaded, by which so many persons are killed and injured.
But while this statute is a wholesome and proper one, we do not understand that it changes the law as it has stood for centuries, as to the responsibility of a person for a homicide caused on his part by pure accident or misadventure, as they are defined in the law. And, therefore, if in the case at bar, it had been shown to the satisfaction of the jury, as the evidence of the defendant tended to show, that he neither aimed •or pointed the pistol at the deceased, but that while he was holding the pistol in his hands, he stooped to pick up a handkerchief, and while rising, without any intention on his part, the muzzle of the pistol was in fact turned towards the deceased, and without the voluntary act of the defendant, and without carelessness and recklessness on his part, was discharged, and killed Hughes, it was as much an accident or misadventure as ever it was, and there is no statute which provides a punisment for it.
In our opinion, then, a charge requested, that if the discharge of the pistol was purely accidental that the defendant should be acquitted, was substantially right. It certainly might have been made clearer or more precise by excluding the idea that the discharge might have been accidental while the pistol was intentionally pointed at the deceased; but as I have already said, that clearly under our law cannot be considered an accident.
But the charge as requested was refused. Did the court give it in substance in the general charge? We think not. On the contrary it seems to be the holding of the court that there can never be a case where one person .is killed by another accidentally, and the slayer be free from guilt — but that *296 whenever death ensues from the discharge of a fire-arm pointed by one person at another, whether intentionally or not, except in case of self-defense, or in obedience to the law, that the person so discharging it, is guilty at least of manslaughter. Such, we think, could not have been the idea of the trial judge; but it'seems to us that such is the meaning of the language used.
Thus, the court says in the general charge to the jury, “ It is true as claimed in this case, that a person may be indicted for homicide, and if the evidence does not establish the homicide, the lesser crime- of assault and battery, or of discharging fire-arms at a person, may be found by the jury. But assault and battery, or pointing or discharging fire-arms at a person, are unlawful acts, and if death results from assault and battery, or discharge of fire-arms, then the jury cannot properly find a verdict for a less degree than manslaughter.”
Here is a direct statement by the court that mere “ pointing or discharging fire-aims at a person is an unlawful act.” It is perfectly evident that this statement is not correct. In the first place, it leaves out the important and essential qualification expressly incorporated into the statute, that the pointing must be intentional. Unless it is, no offense whatever is committed. But the court further leaves out of view the other express provisions of the statute which say, that “ the section shall not extend to any case when fire-arms are used for self-defense, or in the discharge of official duty, or in case of justifiable homicide.” Nor was any statement anywhere made by the court to the jury, that if the defendant did not intentionally.aim or point the pistol at the deceased, that he was guilty of no offense under this section; but in another paragraph, after defining the three crimes of murder in the first and second degrees and manslaughter, the trial judge says, “and saving in self-defense, or in obedience to the law itself, all taking of human life is unlawful.” This also we think was clearly an erroneous statement, for it too excludes the idea that the causing the death of another by the accident or misadventure of a person producing his death, even when engaged in the commission of a lawful act, and without the slightest fault on his part, could ever be excusable.
*297 Another interesting and important question is raised by the charges asked and refused, and on the charge as given. It is this: Can a defendant who is charged with homicide, be convicted of manslaughter, if the evidence shows that the person killed came to his death by means of a shot discharged from a pistol, untentionaily, but without malice, pointed or aimed at him by the defendant? Or must he under such circumstances be found guilty (if at all), of a violation of the provisions of sec. 6822 ? The court distinctly charged that in such case he Should be convicted of manslaughter at least. Was this right ?
There can be no doubt, we think, that under such a state of the case, if the injury to the person is less than death, that he should be punished under the provisions of this section. It is a new offense created by the statute, making that criminal which was not so before. But the contention of the counsel for the plaintiff in error is, that .even if death ensues, that it is not manslaughter, but simply a violation of the provisions of this section, and consequently punishable under that alone. The argument is founded on the language of the statute which provides, “ that whoever intentionally, and without malice, points or aims any fire-arm at or toward any person, or discharges any fire-arm so pointed or aimed, or maims or injures any person by the discharge of any fire-arm so pointed or aimed, shall be fined, etc. * * * “This section shall not extend to any case when fire-arms are used in self-defense, or in the discharge of official duty, or in case of justifiable homicide.” And it is urged, with force, that the word injures is broad enough to, and does in fact include the death of the person injured — that the loss of the life is the greatest injury a person can suffer.
But we think this claim is not well founded. The definition of the verb “ to injure,” as given in the lexicons, is, “ to do harm — to hurt — to damage — to hurt or wound the person.” And we think it is certainly the usage to attach to the word the meaning of hurting or wounding which does not result fatally. We speak of persons killed and injured, thus making a wide distinction between the two.
In addition to this, we think that light is thrown on the meaning of the word injures, as used in the section, by the use *298 of the word maims in connection with it. This certainly applies to an injury less than death, and the maxim noscitur a sociis, applies here. ' As stated in Brooms Legal Maxims, *528, “ in the construction of statutes likewise the rule noscitur a sociis is very frequently applied, — the meaning of a word, and consequently the intention of the legislature being ascertained by reference to the context, and by considering whether the word in question, and the surrounding words, are in fact, ejusdem generis, and referable to the same subject matter.” And as our statute of manslaughter provides for the punishment of a person who causes the death of another without malice while in the commission of any unlawful act, and consequently in a case when he has unlawfully pointed or aimed a fire-arm at another intentionally, we think the fair and obvious meaning of this section 6822, is that the word “injures,” as used in it, does not include death. And in our judgment the closing language of the section, which says that it shall not apply “ to any case when fire-arms are used in self defense or in the discharge of official duty, or in case of justifiable homicide,” was not intended to so broaden the meaning of the word “injures” as to include death; but simply to make it clear that such cases do not come within the purview of the statute, and therefore that the trial judge was right in his ruling on this branch of the case. But upon the other grounds named the judgment of the court must be reversed, and the case remanded for a new trial.